```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
OSCAR HERNANDEZ and MARTHA VALLE    )
NAVARRO,                            )
                                    )
           Plaintiffs,              )    C.A. No. 18-121 WES
                                    )
     v.                             )
                                    )
                                    )
US BANK, N.A., and OCWEN LOAN       )
SERVICING, LLC,                     )
                                    )
           Defendants.              )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, Chief Judge.

Plaintiffs filed this action in state court to rescind what they consider a faulty foreclosure. (Compl., ECF No. 1-1.) After the case was filed, but not before the state court entered a default against Ocwen Loan Servicing, LLC, ("Ocwen Loan"), Defendants removed it to this Court. (Notice of Removal, ECF No. 1.) Pending now are Plaintiffs' Motion to Remand (ECF No. 8) and Ocwen Loan's Motion to Vacate Entry of Default (ECF No. 5). Also pending is the parties' Joint Motion to Rescind Foreclosure (ECF No. 15). The Court GRANTS Plaintiffs' Motion, remanding the case to state court and rendering the two later-filed Motions moot.

I.  Background

This case started with Plaintiffs filing their complaint in Rhode Island Superior Court on December 13, 2017. (Defs.' Mem. of

Law in Supp. of Obj. to Pls.' Mot. to Remand 2, ECF No. 9-1.) The complaint alleges – and it is undisputed for purposes of Plaintiffs' Motion – that US Bank, N.A., ("US Bank") was the last to hold and Ocwen Loan the last to service Plaintiffs' mortgage. (Compl. ¶ 6.) The (previously) mortgaged property is located at 176-178 Grove Street in Woonsocket, Rhode Island, ("Property"), and was Plaintiffs' primary residence before US Bank bought it at a foreclosure sale. (Id. at ¶¶ 2, 5, 16-17.)

Plaintiffs claim that Defendants unlawfully foreclosed on the Property. (Id. at ¶¶ 18-19.) They ask the Court to rescind the foreclosure sale and to award an unspecified amount of compensatory and punitive damages, and attorneys' fees. (Id. at ¶¶ 1[a]-5[a].) Notably, Plaintiffs do not ask that the mortgage and note be invalidated. (See id.; Pls.' Mem. in Supp. of Mot. to Remand 2-3, ECF No. 8-1 ("Pls.' Mem.").) Nor do they ask that Defendants be prevented from foreclosing on the mortgage. (See Compl. ¶¶ 1[a]-5[a]; Pls.' Mem. 2-3.) What they ask is that the status quo ante be restored, so that if Defendants foreclose, they do so in accordance with the law. (See Compl. ¶¶ 1[a]-5[a]; Pls.' Mem. 2-3.)

The parties agree that they are completely diverse. (See Compl. ¶¶ 2-4; Notice of Removal 1-2.) Plaintiffs argue, however, that Defendants cannot remove this case under 28 U.S.C. § 1441(a) because the amount in controversy does not exceed $75,000 as

2

required by 28 U.S.C. § 1332(a). (Pls.' Mem. 2.) Plaintiffs did not demand a specific amount in their complaint. (See Compl. ¶¶ 1[a]–5[a].) But Defendants averred in their Notice of Removal that the amount in controversy exceeds $75,000, as evidenced by the mortgage's size ($279,000) and the Property's current value ($139,800). (Notice of Removal 2-3.)

II. Discussion

The jurisdiction of federal courts is limited; "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). In situations like this one – where removal is based on diversity and the complaint fails to provide an amount in controversy, but the notice of removal claims it exceeds $75,000 – "removal of the action is proper . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(B); see also Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). And when the relief sought is declaratory or injunctive, "the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977).

The object of this litigation is not the Property at 176-178 Grove Street. At least not exactly. Cf. Bobola v. Wells Fargo Bank,

3

C.A. No. 14-14735-MLW, 2016 WL 4844039, at *3 (D. Mass. Sept. 13, 2016) ("It is reasonable to designate the amount in controversy as the value of the mortgage where the Defendants' mortgage interest would be extinguished if the Plaintiffs were ultimately successful. In such a case, it is the property itself that is the object of the litigation . . . ." (citation, alteration, and quotation marks omitted)). The complaint does not demand that Defendants' interest in the Property be extinguished. See id. at *4 (finding amount of mortgage-loan modification for which mortgagor eligible was proper amount in controversy, where "the relief requested in the Complaint, if granted, would not extinguish [mortgagee]'s interest in the Property." (quotation marks omitted)). Nor does it ask the Court to prevent Defendants from selling the Property at a foreclosure sale. Rather, it asks for the Court to return the parties to the positions they occupied before the sale – when Defendants, as mortgagee and note-holder, held legal title to the Property and Plaintiffs, as mortgagors, equitable title. See Lister v. Bank of Am., 790 F.3d 20, 25 (1st Cir. 2015) (explaining that Rhode Island "mortgage law splits the title to a property in two parts: the legal title, which becomes the mortgagee's and secures the underlying debt, and the equitable title, which the mortgagor retains." (alteration and quotation marks omitted)); Milton Sav. Bank v. United States, 187 N.E.2d 379, 381 (Mass. 1963) (noting that in Massachusetts – a title-

4

theory jurisdiction like Rhode Island – "the mortgagor has merely an equity of redemption accompanied by a right to possession[, while t]he paramount title is in the mortgagee").

Rather than the mortgage or the Property, then, the object of this litigation is the latter's equitable title. And the amount in controversy is the value of this title at the time Plaintiffs filed their complaint. See Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) ("Courts determine whether a party has met the amount-in-controversy requirement by looking to the circumstances at the time the complaint is filed." (quotation marks omitted)). In other words, the amount in controversy is the difference between the value of the Property with and without the mortgage attached to it. See 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.5 (West 4th ed. 2018) ("If suit is brought to quiet title to land . . . and the cloud affects the entire title, then the value of the property . . . is the measure of the amount in controversy. If the entire title is not in issue, the amount in controversy is the difference in the value of the land . . . with the cloud and its value with the cloud removed."). But see Pah v. JPMorgan Chase Bank, Civil Action No. 1:12-cv-4071-JEC., 2014 WL 1683332, at *2 (N.D. Ga. Apr. 29, 2014) (finding that where "plaintiff seeks an order rescinding the foreclosure sale . . . the appropriate measure of the amount in controversy is the value of the property at issue"). An analogous situation

obtains when a plaintiff seeks injunctive relief to invalidate a leasehold to mineral rights. See, e.g., A.C. McKoy, Inc. v. Schonwald, 341 F.2d 737, 739 (10th Cir. 1965). For example, in A.C. McKoy, the court determined that the amount in controversy was not the value of the mineral interest, but "the diminished value of the mineral interest burden with the lease or the increased value without the lease." Id.

The Supreme Court applied a similar logic in McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178 (1936). There, a company sought to enjoin the enforcement of a state regulation. Id. at 179. The company asserted that the amount in controversy was equal to the value of its business, much more than the jurisdictional requirement, which was then $3,000. Id. at 180. The Court rejected the company's assertion, finding that "[t]he object or right to be protected against unconstitutional interference is the right to be free of that regulation." Id. at 181. "The value of that right," the Court said, "may be measured by the loss, if any, which would follow the enforcement of the rules prescribed." Id. Put otherwise, the amount in controversy was the difference between the company's value in a world where it abided the challenged regulation versus one where it did not. And because the company – the party seeking federal jurisdiction – had not provided evidence to inform this calculation, the Court dismissed. Id. at 190.

The Ninth Circuit did the same in a recent foreclosure case. See Corral v. Select Portfolio Servicing, Inc., 878 F.3d 770, 775-76 (9th Cir. 2017). In Corral, homeowners sought to temporarily stay a mortgage foreclosure sale pending review of their loan-modification application. Id. at 774. The court found that neither the original amount of the note, nor the current level of indebtedness, nor the value of the property represented the amount in controversy. See id. at 776. These measures – applicable in cases where "plaintiffs seek to enjoin foreclosure indefinitely as part of an effort to quiet title to the property or rescind their loan agreements" – were inapt in a case like Corral, the court explained, where "even if Appellants['] [lawsuit] were to succeed . . . they would not be able to retain possession and ownership of their Property without paying off their debt." Id. All they might have won is a few extra nights in their home as their application was reviewed, and either denied before the property was foreclosed upon, or accepted. Id. Therefore, the evidence the loan servicer presented in its motion – the current amount of indebtedness – was insufficient to support removal. Id. Needed, the court held, was evidence showing the value of the object of the litigation – the temporary injunction – which might include "the transactional costs to the lender of delaying foreclosure or a fair rental value of the property during the pendency of the injunction." Id.; see also Ballew v. Am.'s Servicing Co., No. 4:11-CV-030-A., 2011 WL

880135, at *3 (N.D. Tex. Mar. 14, 2011) ("[P]laintiff seeks to temporarily delay foreclosure proceedings until the merits of this lawsuit are decided. The value of such a delay is not the value of the property, it is the value to plaintiff of postponing foreclosure until he can determine through this suit whether defendants are entitled to foreclose."); Sanders v. Homecomings Fin., LLC, No. 2:08-CV-369-MEF., 2009 WL 1151868, at *3-4 (M.D. Ala. Apr. 29, 2009) (finding amount in controversy not equal to mortgage's original value, but rather "a[t] the very most" to mortgagee's "equity in the home," where mortgagee sought to enjoin foreclosure sale).

The same reasoning requires remand here. Defendants have not provided evidence of the amount in controversy. The value of the mortgage and that of the Property are not what Plaintiffs would win if their lawsuit were to succeed. What they would win – the object of the litigation – is, essentially, equitable title to the Property, something as to which Defendants have not attempted appraisal. Defendants have thus failed to meet their burden to prove federal-court jurisdiction by a preponderance of the evidence.

III. Conclusion

Plaintiffs' Motion to Remand (ECF No. 8) is GRANTED. Defendants' Motion to Vacate Entry of Default (ECF No. 5) is DENIED as moot, as is the parties' Joint Motion to Rescind Foreclosure

(ECF No. 15). The parties may file the latter in state court, which, if so inclined, can make quick work granting it.

IT IS SO ORDERED.

/s/ W. E. Smith
William E. Smith
Chief Judge
Date: June 18, 2018